V. Navy Vietnam War veteran Mr. Grossman, you may proceed. Thank you, Your Honor. Good afternoon, Your Honors. Good afternoon. Pete Grossman, representing trial. Your Honor, there are four issues to review. The first issue is whether or not the last paragraph of the 839 had the mean plus function clause under 35 U.S.C. Section 112, paragraph 6. The second issue is, if it is, then is the appropriate structure in the specification of the last element. The third issue is whether or not infringement does not occur until a surgeon uses the claim convention, the claim template. The fourth issue was the ending of discovery prematurely. How does that affect the judgment of the court on this issue? It doesn't. Well, then how can we decide it? We can only review the judgment. We don't review random rulings that were made in the course of a case that don't affect the judgment. Okay. And there's three issues to discuss today, Your Honor. That's fine. I'll start with the first issue, Honor, 35 U.S.C. Section 112, paragraph 6. Can you help me with one thing? Sure. When I was preparing, look at 845. 845? Yeah. At the same time the claims were amended, the extended specification amendment, it seems to me that somebody dropped the ball. The specification didn't get put in. Your Honor, yes, it did not get put into the specification, but those exact words did get put into the claim. Those claim, where it says amend the specification by adding these words after the 10, those are the same words that were inserted into Claim 11, which would be Claim 1, page 445. So all of the words did not get inserted into the spec because, for whatever reason, they are in the claim, which goes to our point that that structure that was supposed to go into the specification did, in fact, go into the claim. The claim does have structure, the holes. Therefore, it's not a 112, paragraph 6 limitation, although it does have the word means. I don't know if that answers your question. Yeah, it does answer my question. One of the things that also struck me about this is that some of the embodiments that are reflected in the specification really seem to have been precluded by the amendment. For example, embodiments which, as I understand it, prevent axial movement. The axial movement would be – you're talking about the embodiments that require the locking? Yeah. Okay. The axial movement in the claim will refer to the pin being inserted into the stable fragment, across the fracture, and – I'm sorry, into the fragment, the fracture, across the fracture, into the stable fragment. That's the sliding time. Now, if it's locked thereafter, some of the embodiments – I don't know if that affects the sliding of the pin. I have a misunderstanding. If you look at column 5, page 29, it says, This provides fixation of the pin in spaces over transverse planes, the plane of the plate, which is the arm, and an axial plane, which seems to say that at least this embodiment is preventing axial movement. Am I misunderstanding that? I think it determines when the axial movement is occurring. If the axial movement we're referring to is during the insertion of the pin, it's okay, because the axial movement occurs, and then it's locked. If we're talking about axial movement after the procedure, then it would cover it. But under the amended claim, it needs to allow axial movement after the pin's been put in, right? Because it says, for allowing the pin to slide axially. That's during the procedure, Your Honor. Oh, it's during the procedure. Yes, sir. That's the purpose of the invention, is that the pin is slid in to capture both fragments. There's no compression caused on the fragments. It's compared to the prior art, when the plate is placed on the fragments, and then a screw comes down into the fragment, and the screw is rotated to capture the fragment. What causes the compression? It brings the fragment up, which causes the compression. So after the insertion, it's locked? Not locked. I hate to use the word locked, but there won't be actual compression, because you can put a J-hook on the end of the pin, and put the pin on top, so the J-hook rests on the plane of the pin. So with all practical purposes, it's locked, it's not going to move. Okay. Yes. Is it the pin that is permitted to slide axially, or is it the bone fragment supported by the pin that is permitted to slide axially? It's the pin, Your Honor. The pin is, the procedure either way, but let's just take it this way. You screw the plate onto the stable bone to deform it, and then the plate will cross the fracture. And then the second end of the plate that is now on the distal part of the fracture, the proximal deformance of the distal, the pin then slides through that hole that's in the plate, captured the fragment. The fragment crosses the fracture. It goes into the stable bone where it's secured and anchored in the stable bone. So it's the pin that slides. So when the pin slides to capture the fracture fragment, reverse the fracture, and secure it in the stable bone fragment, that sliding does not cause the fragment to move at all. As compared to the prior art,  One screw goes into the stable bone fragment, and the other screw goes into the fracture fragment, and during rotation of that screw, the fragment migrates up against the plate, and that's the compression we're talking about. So it's the sliding of the pin that prevents the compression. So the holes in the plate is the structure that allows the pin to slide axially. At the same time, those holes, the circumferential surface of the holes, prevents that pin from moving relative to the plate on the plate by having a boundary there, which is stabilizing the pin against movement relative to the plate. So the holes are a structure, and that's what's in the last paragraph. Because the structure's in the last paragraph, even though it used the word means, the presumption of being a means-plus-function claim is overcome. So it's not a means-plus-function element. I'll move on to the next issue. However, if it is a means-plus-function element, the holes, which is in the specification also, count five minus one, two, six, say that the holes is a structure that would a pin slide through. Third issue, which we're not going to discuss. Yes, Your Honor. Yes. Can I embellish on that a little bit?  In the patent, Your Honor, it's figure five, which is to cover the patent. So it's appendix page 27. And the pin goes through the stable bone, across the fracture, goes into the fractured bone, and comes out, and it has a hook on it, a J-hook on it. That's the portion that Your Honor described in the specification, and that's exactly what Sprecher does. If we look at it in x-ray at appendix 347, Your Honor, and look at it, maybe turn it 90 degrees, would be the best way to look at this. So you see the plate, kind of like an S, going on top of the wrist. And to the right side of that S are a couple of pins that go through the fractured fragment. There's a fracture about an inch down there. It doesn't come across as good on the copies. And the pins continue down to the stable fragment. And then you see the screw on the left of that, about an inch and a half, the screwdriver on top of it. And if we compare that to what's in the cover of patent figure 5, it's virtually identically two screws holding one end of the plate down. And you have a pin going through both fragments with the J-hook on top of the plate. So, right, so to answer your question, what the defendant does is not in the specification. I think that we're done with paragraph 6, unless your honors have any questions on that issue. And we won't talk about a discovery issue that's not part of the court's judgment. I assume that if we were to reverse, you might like some language in there that instructed the lower court to allow discovery to continue as it previously had been scheduled. Is that right? Nothing would make me happier. To be honest. Well, nothing. Nothing except the reversal part. I didn't want to ask. I didn't want to be presumptuous. But in light of your question, your honor, 14 days would be wonderful. And then the other issue is whether or not infringement only occurs after the surgeon does it, only while the surgeon is doing his operation. I think this is a cross-medical issue. Yes. Yes, it is. And I think the way to claim that is that you're saying this is not the same case as cross-medical. The claims are different. The claims don't call for a structure that only exists or a combination that only exists during the course of a surgeon procedure. Yes, your honor, that's right. And they were actually rewritten in response to the office action, and so it would include that. So I think that covers it all, your honor. Do you have any questions? All right. Thank you. Thank you. You'll be served for the balance of your time. Thank you. Mr. Ray. May I please report, Robert Serrano on behalf of Striker Corporation, that his court should affirm the district court's grant of summary judgment of non-infringement in favor of Striker. How do you deal with the fact that even if they're right, that this is a means plus function claim, one of the embodiments that's described in the specification seems to be identical to the accused's biases? Well, Judge, I'd answer that in two parts. First of all, it's our contention that there is no structure, there is no disclosure in the specification of a whole performing the claim functions of this means plus function limitation. And second of all, if you look at Figure 5 in the packet, which I think was talked about earlier, it shows the side view of a plate. It does not show the top view of a plate. It's Striker's contention that the structure disclosed in this specification for performing the two claim functions are a whole plus some other structure, such as a slot, a thread, a pin, or whatever. A pin? How about a pin? Well, we don't believe that that's disclosed. Well, it's there in the picture, and it's described in the part of the specification in which they're referred. But I think what we need to do is we need to go back to the prosecution history. And in the prosecution history, in order to obtain allowance, try to make two agreements with the patent office. First of all, they agreed to write the claim in means plus function format. And they also agreed to better define the whole. And in order to better, if a whole needed better defining, then they were adding some structure to it. And they added that structure through means plus function language. And when you go to the specification and you look at the specification, the only structures that are disclosed for performing these two claim functions are a whole plus some other structure. Do you agree that the arrangement depicted in Figure 5 is the same as the Houston one? No. What's different about it? Well, we can't tell from Figure 5 whether that's a whole, whether the pin's going through a hole, whether the pin's going through a hole in the system. Okay. Is that the same as the accused's device? Is that the same structure as the accused's device? Yeah. Well, in some instances, a striker plate can be used for the bent pin, but that doesn't mean it's performing the claim functions. There's no evidence on this record. Just stay with me. In terms of the depiction, at the device, assuming that Figure 5 is showing the bent pin going through a hole, is there any difference between that structure and the structure of the accused's device? That's just going through a hole. Yeah. And a hole prevents movement across the plank. Well, then you're judging. In essence, you're asking, well, if striker infringes, does it infringe? So your answer is yes. Well, no, because there's no— If, in fact, you take Figure 5, assume it's going through a hole, you assume that the hole prevents movement over the base of the plank. No, I can't agree with that. No, you have to agree with that. It's part of the hypothetical. It's not optional. I'm sorry. Let's start over. If you assume that they were comparing Figure 5 to the accused's device, I'm asking you to assume hypothetically that Figure 5 also shows a hole, and it shows a hole that prevents movement across the plane of the plank. Is there any difference between that structure and Figure 5 in the accused's device? So we're assuming that the hole is preventing all displacement in the plane of the plank. Right. And we're assuming that the pin is preventing compression across the fracture. Right. I mean, so I guess I would have to agree. I would have to agree, Judge, if you're saying if we infringe, then we infringe. I guess I don't understand the hypothetical to a certain extent. If you remove all arguments, or if you remove all possibilities and say, well, if Stryker infringes, then they infringe. I'm not sure I understand the question. Counsel? Yes. If we don't agree with you in the lower court about whether or not the last limitation was means plus function, suppose we say it's not means plus function because there's sufficient structure articulated therein, then it's irrelevant according to our law, isn't it, whether those ultimate statements of function are met in the accused's device. There's another assumption. I've got to make you walk through my assumptions. But it's assuming that we disagree with you regarding means plus function, the fact that Stryker's product may not perform these ultimate functions to the very end of Claim 1 doesn't put that situation in effect. Well, I would have to disagree with you. There has to be some, the claim calls for preventing oppression across the fraction. And there would have to be some finding or some evidence that supports that Stryker's product actually does that. There would also have to be some evidence that Stryker's plates prevent displacement in the plate. And there's no evidence in the record that would support that. Whenever there is functional language in an apparatus claim and the functional language is not means plus functional language, but rather functional language incident to the other elements of the claim, that functional language doesn't need to be met in order for there to be infringement, does there? Well, I would say in this instance it has to be met. Do you have any case precedent that would direct me to a case of ours in the past? Because off the top of my head I can think of titanium, metal, in which we talked about the coercive properties of the chemical composition and the ultimate fact of the court as well. The properties, the function of this don't have to be met as long as the structure is met. It is a composition claim. Are there cases to the contrary that you might want to direct me to that suggest that functional language like this is still a claim limitation and must be met even in an apparatus claim? I don't have any evidence on that. So, is there anything that, is there any reason why we shouldn't read figure 5 when it shows the plate 1 to be referring to the structure that's shown in figure 1? I don't think there's, you know, to be honest, to be frank, Judge, the description of what's in figure 5 appears in column 6 of the patent. And it says in figure 5 a pin plate 1, and pin plate 1 has holes and slots. And it's shown in figure 1. Yes. With holes and slots. Some of those holes don't have slots, some of them are just holes. No, but I agree with you. But you can't tell where this pin is going. Is that pin going in a slot? Is that pin threaded? To say that, as Judge Steich was saying earlier, is that identical to this type of product? There's too much ambiguity in the specification to be able to say that. Well, that may be a reason why the other side wasn't entitled to some judgment, but you're trying to defend some of the judgments in your case. Did you put in evidence that the spiker plate didn't prevent compression? Well, Judge. No, no, just the answer. Yes, we did. You put in evidence that it didn't prevent compression. It didn't prevent compression? Yes. Where do I find it? I don't think we put in evidence, but I don't think we're required to put in evidence. Did you put in evidence that the spiker device didn't prevent moving across the face of the plate? Well, we put in evidence that the striker products do not have the accused structure. Well, that's not the question. The question is, did you put in evidence that it does not prevent moving across the face of the plate? No, but we weren't required to. As a movement on summary judgment, we have the ability to point to an absence of evidence. And these claims, properly interpreted, require a hole plus some other structure for performing the claim function. And the striker products only have holes. They don't have a hole plus another structure for performing the claim function. But why do you say that it requires some other structure for performing this function? Why can't the hole itself perform this function? Because in order to stabilize and displace the plane of the plate, you have to lock it into place. And a hole by itself can't lock a pin in place. It needs some other structure, like what's disclosed in the package, such as a thread, a slot. There's some other structure. But when you go back to the prosecution history, if TriMet agreed to better define the holes, they made two agreements with the Patent Office. They agreed to write it in the means plus function format and to better define the hole. And if a hole was enough, then the Patent Office wouldn't have required them to better define it. And how did they better define it? It had to mean that they had to add some structure to it. There's no, so what's wrong with the structure of the plate? You can only hear it here, of the claim. You've got an embodiment, which is described as a body, a hole, and a pin with a J on it. Well, in essence, they've disclaimed the ability to claim that when they agreed with the Patent Office to write the claim in means plus function format and to better define the hole. How did they, I don't understand what you just said. Well, let's go back to the prosecution history. After final rejection, they had an interview. And the question was they had to distinguish between the pinplate attachment of the prior art versus what was claimed in the alleged invention. And they made two agreements with the Patent Office. They, first of all, agreed to write the claim in means plus function format. Secondly, they agreed to better define the hole. And when you go… Well, how does that involve explaining the holes together with this J-hook pin? Well, I think when you go to the specification judge and you look at when it's talking about the J-hook, it's always being locked into place first in one of the structures that's disclosed for locking. That's not the way I read it. It says specifically in one embodiment, there's this fixation in one embodiment that pins the J-hook end over the superficial surface of the plate on the statement above. And when you go to what's as stated above, it's being locked into place first into one of the structures other than a hole. Where is that? Well, judge, it appears in two places. In column five, it's line six. It says, in one embodiment, the entrance slot four is slightly undersized and capable of widening as the pin passes through the slot. This way, the plate one will snap as the pin is cast into the slot. So you're using a hole plus another structure to lock the pin in place, and that prevents engagement, i.e., stabilizes the displacement of the pin in the plane of the plate. Once the plate is snapped over the pin, the pin is bent to further secure it. So the bending over to further secure it is only a secondary fixation. It was first locked into place in a hole plus some other structure. And when you go to column four, it says the rigidity of—this is column four, line 56— the rigidity of pin fixation of the fracture fragment is considerably improved by having it pass through one of the small holes and possibly a tight slot four in the pin plate, which has been secured to the proximal fragment ten. After the pin eight is placed, it can be bent over the superficial surface of the plate to keep it from migrating. And even in this instance, it's being put into a tight slot first. So in all the instances in this specification where it's talking about bending it over on that J-hook, it's being locked into a structure other than the hole first,  so there's no description here that just simply describes bending the plate over without locking it into a hole plus some other structure first. So that's what I understand you're saying to me, that if we deleted the words, the state of the thought, you would—your whole case depends on the meaning that you've just given with the words the state of the thought. I would say no, sir. No. How could—you were just saying that the intervention was described earlier. I'm saying delete those words that just said one embodiment that can't be available to superficial surfaces of the plate and stop the— Because that's it. That's it. The description of the huge device, there's nothing missing, is there? Well, I believe that's a description of the huge device. It doesn't talk about the size of the holes being used. It doesn't talk about the size of the pin being used. And more important, when— what TriMet claims is performing the displacement in the plane of the plate is the circumferential surface of the hole, and that's nowhere to be found in the specification. This specification does not make a single mention, nor does the prosecution history make a single mention that the circumferential surface of the hole is what's preventing displacement in the plane of the plate. I see that about it. But counsel, even the language you pointed us to in column four, line 58, the language you pointed cast us through one of the smallest three, and possibly a tight slide. Why doesn't the language that says a and possibly a slot mean that it could pass through a slot or it could just go through the hole and the hole would be enough? Well, I would suggest, Your Honor, that the proper way to read that is it's not suggesting that there's no slot. It's just suggesting that there possibly might be a tight slot. It's talking about the tightness of a slot. But then again, in columns five, one, three, it says, following right up on this same thing, it says the plate has distal holes through which the pin is passed. Additionally, these holes may or may not have slots. And that's still consistent with our position. But how come the may or may not have slots language isn't just sort of further elaborating on the possibly a tight slot? Well, first of all, it appears in a different paragraph of the specification. And I think when you go to this section, first of all, it's talking about the general structure of the pin. And it's also recognizing that not only can there be slots, but there can be other structures. That's what's described below. Not only that, can there be holes? There are holes, but there may or may not have slots. But it could also have slots. It could have threaded pins. It could have studs. I say that a lot. Thank you very much. Mr. Grossman? Did you hear anything that gave you pause? Pardon me? Did you hear anything that gave you pause or reason to recall? Enough. I didn't mean to preempt your comments. I just approached it off of a point. I was going to raise it in questioning. So this is going to be repetitive. All right. Thank you very much. The case is submitted. That concludes our session this afternoon. All rise.